CAUSE NO. 365269

| | | |
|---|---|---|
| RODOLFO ROSALES | § | IN THE COUNTY COURT |
| | § | |
| VS. | § | AT LAW NO. 2 |
| | § | |
| UNIVERSITY OF TEXAS AT SAN ANTONIO AND MANSOUR O. EL-KIKHIA | § § § § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

1. Now comes **RODOLFO ROSALES**, Plaintiff, and files this Plaintiff's First Amended Petition, complaining of **UNIVERSITY OF TEXAS AT SAN ANTONIO** (hereinafter referred to as **UTSA**) and **DR. MANSOUR O. EL-KIKHIA**, hereinafter referred to as Defendants, and would respectfully show unto the Court as follows:

I.

### PARTIES

2. Plaintiff is a resident of Bexar County, Texas.

3. Defendant, **UNIVERSITY OF TEXAS AT SAN ANTONIO**, is a Texas entity doing business in Bexar County, Texas, which has answered herein.

4. Defendant, **DR. MANSOUR O. EL-KIKHIA**, is an individual residing in Bexar County, Texas, who has answered herein.

II.

### VENUE

5. Venue of this action is proper in Bexar County, Texas in that all or a substantial part of the events or omissions giving rise to the claims herein occurred principally and/or exclusively in Bexar County, Texas.

## III.
## DISCOVERY

6.  Plaintiff intends to conduct discovery under Level 3 of the Texas Rules of Civil Procedure.

## IV.
## MISNOMER / MISIDENTIFICATION

7.  In the event that any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer" and/or such parties are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## V.
## FACTS

8.  Plaintiff is a Professor for Defendant in the Department of Political Science and Geography. In the fall of 2009, Plaintiff taught among other courses, a course entitled Contemporary Political Philosophy. In that course, Plaintiff focused entirely on Black Feminism and Latina Feminism. Plaintiff's syllabus spelled out exactly what was going to address that semester. The only change was that Plaintiff ran out of time and had to drop two Latina Feminist texts. So, Plaintiff was able to address all four Black Feminist text and two Latina Feminist text. On November 11, 2009, Plaintiff received an email from Chair Dr. Mansour El-Kikhia, advising Plaintiff that he wanted to discuss some issues with Plaintiff. Plaintiff requested an outline of the issues and a summary of what the issues were about. Chair Dr. Mansour El-Kikhia's Administrative Assistant responded that the issues were student complaints. Plaintiff then requested that she or Dr. El Kikhia outline the complaints and a summary of what they were about. Dr. El Kikhia responded that Student Confidentiality did not

allow him to send the information over.

9. Plaintiff complained about what he perceived to be discrimination regarding his treatment and regarding the materials he covered. Thereafter, Plaintiff was subjected to retaliation.

10. Plaintiff complained about perceived discrimination of other minorities and females in the department and elimination of a African American Studies program by the Department Chair. Clearly, the Department chair had entered into a pattern of mistreatment of minority and female instructors and females in the Department and his mistreatment of those who complained about discrimination in the Department. El Kikhia began a pattern of retaliation against those who complained and eliminate of those who presented positions that conflicted with his views, particularly where the opposing views involved minority and/or female positions or views.

11. Thereafter, Plaintiff received a memo from Dean Daniel J. Gelo, dated January 5, 2010 accusing Plaintiff of not meeting his obligations, stating "I have reviewed the materials and find that your actions and inactions amount to a failure to complete work for which you have been paid and a significant breach of professional responsibility." Dean Gelo went on to point out that after reviewing Plaintiff's record he found that Plaintiff had not published in nine years (since the publication of Plaintiff's book The Illusion of Inclusion: The Untold Political Story of San Antonio) so that Plaintiff presented a dilemma to the Defendant, UTSA. From these two statements above, which is the only reference to the basis for imposing the following: In the memo Dean Gelo punitively increased Plaintiff's teaching load to four courses a semester starting immediately the spring semester of 2010. Barring Plaintiff from teaching upper division classes or graduate classes as well Dean Gelo forbade Plaintiff to teach in the summer. Because the semester had already started, Dean Gelo "allowed" Plaintiff to teach the two upper division

classes that Plaintiff was already assigned for the semester. But that thereafter for two years, Plaintiff was barred from teaching upper division classes and graduate classes. Plaintiff was also ordered to follow all university policies governing classroom activity as well Plaintiff was ordered to attend workshops on teaching. Plaintiff was informed that these conditions will be in effect for minimally two years and Plaintiff's progress will be evaluated by the department chair and dean's office each semester. Then the memo concludes with this statement: "Failure to meet the above conditions or to demonstrate scrupulous adherence to college and university policy and significant improvement in Plaintiff's teaching will result in further action, up to and including termination."

12. In effect what this action (which is based on student complaints) does is strip Plaintiff of all his privileges and rights as a tenured associate professor of political science. Plaintiff had not realized that Plaintiff was under any investigation or process that could lead to such harsh and cruel and unusual actions. Further, it violates the terms of Plaintiff's contract that Plaintiff is awarded at the beginning of each year. Moreover, it was clear that the administration failed to follow University procedures or process.

13. In imposing this "cruel and unusual" punishment on Plaintiff the Dean's office has violated procedures that outlines the process by which student complaints are handled. The Dean's office has also violated university due process by not following the process by which an employee, faculty or staff, is entitled to, which process is access to the supposed written evaluation of said student complaints and Plaintiff's response. At no time was Plaintiff allowed to counter the written evaluation from either the Chair of Plaintiff's department, Political Science & Geography, or the Dean of the College of Liberal and Fine Arts.

14. An informal hearing was granted on this action, where Plaintiff's representative was the

National President of the League of United Latin American Citizens (LULAC). Present at this informal hearing was the Vice Provost Jesse Zapata, whose role was to observe and maintain procedure. Also present were the two persons who were imposing this action, Dean Daniel J. Gelo and Chair Mansour El-Kikhia. At that hearing, it should be noted that neither the Dean Daniel J. Gelo nor the Chair Mansour El-Kikhia came prepared to respond to the grievance. They brought absolutely no documentation nor did they in any way defend their actions except to say that Plaintiff's performance had brought Plaintiff to this point. They were very rude in opposing the National President of LULAC, threatening as to walk out of the informal hearing.. The Chair Mansour El-Kikhia actually rose up and declared that he would not be present at a hearing where LULAC was present. The National President of LULAC had to calm them down by voluntarily removing her title as National President of LULAC. This has never before occurred in what we would expect to be a respectful process on both sides.

15. In one other incident, when Plaintiff raised the issue that the Chair Mansour El-Kikhia had actually suggested in an email to Plaintiff, that Plaintiff deserved a punch in the nose. The action constituted a threat and verbal assault directed at Plaintiff, for which Chair Monsour is individually liable. The Chair Mansour El-Kikhia stated that he said it and would not take it back. Plaintiff raised this issue to show the biased nature of this whole process. The informal hearing was virtually a kangaroo court where Dean Daniel J. Gelo and Chair Mansour El-Kikhia simply sat and listened to the National President of LULAC's presentation of Plaintiff's grievance where the National President of LULAC pointed out how this action violated every sensible point of procedure, extending into a violation of academic freedom. They apparently did not respect the process or Plaintiff or the National President of LULAC enough to feel accountable. Plaintiff does not know what the role of the vice provost was in that process except

to keep order, which was only needed when they threatened to walk out. Other than to keep order, the Vice provost did not see fit to request that they present their account by at the very least allowing Plaintiff and the National President of LULAC to review the supposed written evaluations by either Dean Daniel J. Gelo or Chair Mansour El-Kikhia. The University eventually determined through the grievance process that the actions of the Department and the supervisors were improper and did not follow policy but essentially they still failed to take any corrective action.

16. Since the above occurrences, Plaintiff has suffered harassment, retaliation and/or discrimination based on the above actions and based on his complaints, including the filing of his EEOC charge. Plaintiff has suffered further threats to his position, has received increased caseloads when compared to other instructors and has been deprived of the assistance that he has requested.

17. Moreover, it is clear that Plaintiff has not been paid in a proper manner and amount compared to non-hispanics and/or those who have not complained, which results in discrimination in pay and compensation when compared to other instructors.

18. Plaintiff suffered discrimination, harassment and retaliation because of race, age and national origin and his complaints regarding discrimination of others in violation of the Title VII, the Age Discrimination in Employment Act, and 42 U.S.C. section 1981.

VI.

## DISCRIMINATION, HARASSMENT AND RETALIATION BASED ON RACE AND /OR NATIONAL ORIGIN

19. Plaintiff had faithfully served Defendant University in his capacity as an employee and faithfully performed all duties expected of him. The acts committed by the University and the

agents, servants and/or employees of the Defendant University in discriminating against Plaintiff based on his race and/or national origin, and retaliating against the Plaintiff for filing his charge with the EEOC, complaining of racism and discrimination and properly performing his duties all constitute violations of Title VII and 42 U.S.C. section 1981, including their anti-retaliation provisions. Plaintiff further contends the acts of the University constitute violations of the Age Discrimination in Employment Act, including its anti-retaliation provisions.

## VII.

20. The evidence will demonstrate:

   1) Plaintiff belongs to a protected class based on race and/or national origin;

   2) Plaintiff was qualified for his position;

   3) Plaintiff was subject to adverse employment action(s); and

   4) Others outside Plaintiff's protected class were not treated similarly.

## VIII.

### RESPONDEAT SUPERIOR

21. Employees involved in the discrimination, harassment and retaliation described herein were at all times employees, agents, or representatives of the Defendant University and were at all times acting in the course and scope of that employment. Accordingly, Defendant University is liable for such conduct under the doctrine of *Respondeat Superior*.

## IX.

### ASSAULT CLAIM

22. Moreover, it is clear that Defendant El-Kikhia threatened and assaulted Plaintiff verbally and/or physically. Therefore, Plaintiff solely asserts a claim against Defendant El-Kikhia strictly based on the assault, which Defendant El-Kikhia has admitted.

## X.

## DAMAGES

23. Plaintiff alleges that as a direct and proximate result of the conduct and/or omissions on the part of the Defendants, he is entitled to recover at least the following legal damages, in an amount within the jurisdictional limits of the court as of the time of filing suit:

   (1) Lost wages, past and future;

   (2) Mental anguish, personal injuries and emotional distress suffered in the past;

   (3) Mental anguish, personal injuries and emotional distress which, in all reasonable probability, will be suffered in the future;

   (4) Compensatory damages in the maximum amount allowed by law; and

   (5) Reasonable attorney fees, expert fees and costs.

24. Plaintiff further requests equitable relief to remedy the injustice caused by Defendant University and to prevent future similar conduct by Defendant University.

## XI.

## ADMINISTRATIVE FILINGS

25. Plaintiff filed his original verified complaint with the Equal Employment Opportunity Commission on or about July 9, 2010, alleging that the Defendants had committed unlawful employment practices and retaliated against Plaintiff.

26. Thereafter, Plaintiff received a "Dismissal and Notice of Rights" from the EEOC, dated September 30, 2010 and actually received by Plaintiff on October 4, 2010, giving Plaintiff notice of his right to sue Defendants within 90 days of its receipt. The 90th day from receipt was January 2, 2011, a Sunday. Therefore, suit was due to be filed by January 3, 2011. Suit was marked filed January 3, 2011.

## XII.

## ATTORNEY FEES

27. Defendant University's conduct as described in this petition and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retaining counsel. Therefore, Plaintiff seeks all reasonable and necessary attorney fees and expenses as costs in this case from Defendant University, in the event that Plaintiff prevails as provided by the applicable statuutes, which would include at least the following:

    A. Preparation and trial of the claim, in an amount the court deems reasonable;

    B. Post-trial, pre-appeal legal services, in an amount the court deems reasonable;

    C. An appeal to the Court of Appeals, in an amount the court deems reasonable;

    D. Making or responding to an Application for Writ of Error to the Supreme Court, and attorneys' fees in the event that application for is granted, in an amount the court deems reasonable; and

    E. Post-judgment discovery and collection in the event execution on the judgment is necessary, in an amount the court deems reasonable.

## XIII.

## JURY DEMAND

28. Plaintiff further demands a trial by jury. A jury fee has been tendered.

## XIV.

## PRAYER FOR RELIEF

29. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Defendants be cited to appear and answer herein; that upon a final hearing hereof, a Judgment be rendered for Plaintiff for damages set out above in an amount the jury deems reasonable under the circumstances, along with

costs of court, and both post and prejudgment interest as allowed by law, attorneys' fees and expenses as costs and for such other and further relief to which Plaintiff may be justly entitled, in an amount within the jurisdictional limits of the court as of the time of filing suit.

          Respectfully Submitted,

          PONCIO LAW OFFICES
          A Professional Corporation
          5410 Fredericksburg Road, Suite 109
          San Antonio, Texas 78229-3550
          Telephone:   (210) 212-7979
          Facsimile:(210) 212-5880

BY: _____
     ADAM PONCIO
     STATE BAR NO. 16109800

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this First Amended Petition was forwarded to the following counsel of record on this the 19th day of May, 2011, as follows:

Erika M. Laremont
Assistant Attorney General
Office of the Attorney General        VIA FACSIMILE
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 Telephone
(512) 320-0667 Facsimile

_____
**Adam Poncio**